(122 App. Div. 502.)

COMMONWEALTH TRUST CO. v. YOUNG et al.

(Supreme Court, Appellate Division, First Department. December 6, 1907.)

1. PRINCIPAL AND AGENT—DEALING BY THIRD PERSONS WITH AGENTS—LIMITATION OF AGENT'S AUTHORITY.

One dealing with an agent, with knowledge that he is an agent, is bound to know the limitations placed on his authority.

2. SAME.

Plaintiff trust company, with which defendant had agreed to procure in Europe the underwriting and the public issue or withdrawal of certain bonds, on the statement of its agent that defendant's commission therefor should be settled at the same time that the bonds were so issued or withdrawn, delivered to its agent, to enable him to settle such commission account, interim certificates, entitling him or his assigns to a certain amount of the bonds. Some of these certificates were delivered by the agent to defendant in settlement of commissions, without defend-

,ant having procured the public issue or withdrawal of the bonds in performance of his agreement, and others were purchased by defendant from the agent. *Held*, that defendant was bound to know the limitation placed on the agent's authority, and his possession of the certificates so obtained gave him no right to the bonds as against plaintiff.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 40, Principal and Agent, §§ 377, 377½.]

Appeal from Special Term.

Action by the Commonwealth Trust Company of New York against John W. Young and others, in which defendant Pierre Calvet Rogniat pleaded a counterclaim. From a judgment entered on a decision after trial at Special Term, dismissing the counterclaim, said defendant Rogniat appeals. Affirmed.

Argued before PATTERSON, P. J., and McLAUGHLIN, LAUGHLIN, HOUGHTON, and LAMBERT, JJ.

Frederic R. Coudert, for appellant.
D. Cady Herrick, for respondent.

PER CURIAM. The attitude of the appellant respecting the subject-matter of his claim is unmistakably indicated in the contention of his counsel that such claim is not based upon a contract for commissions, but upon the possession of the "interim certificates" which entitled him, irrespective of antecedent relations, to the possession of the bonds called for by them; or, in other words, whatever may have been his situation before those "interim certificates" were delivered, when they were given into his possession there was a termination or severance of antecedent relations, a recognition of his performance of all that was incumbent upon him to perform to entitle him to such certificates, and consequently his rights reposed upon the ownership of the certificates, which, although not negotiable, were quasi negotiable.

This contention is based upon the consideration that the transaction respecting the certificates and the antecedent matters was one between the appellant and Young as principals. The fallacy of this is in the assumption that Young and the appellant were dealing together as principals. It is plain that Young was an agent and not a principal, which fact the appellant knew and understood when he dealt with him, and therefore was bound to know the limitation placed upon his authority. When the "interim certificates" were delivered to Young, they were not delivered free from all conditions. On the contrary, they were delivered for a specific purpose. The evidence is satisfactory that Young applied for them in order that they might be used in Paris simultaneously with the carrying out of the subscription agreement made by the Rogniat Syndicate; for Young, in applying for them, stated to the trust company issuing them that it was necessary to settle with the appellant his commission account at the same time the bonds were issued or withdrawn in Paris, and with that understanding, and for that purpose alone, the certificates were issued and forwarded to Young. There was thus a limitation placed upon Young's right to use the certificates, and the present contest being between the original parties to the transaction, the appellant is bound by this limitation. He therefore holds them not independently of, but still connected with, the

terms of his agreement respecting the subscribers procured by him in France to the shipbuilding scheme. ⅙ By the terms of his agreement his duty was not fulfilled in simply procuring the names of subscribers, of whom he was one to a large amount. He was not only to procure subscribers, but the fair import of the terms of his agreement is that he undertook to procure, in addition to that, either the public issue or withdrawal of the bonds. The several things he was obliged to do before he became entitled to his commission were (1) to procure the underwriters, (2) procure the public issue of the bonds, or (3) their withdrawal from public issue. Thus it would appear that the claim of the appellant must stand upon his right to compensation for services, which right has not accrued because he has not performed his contract, and it does not stand upon the possession of the "interim certificates" which, as the facts are shown in the record, gave him no additional or other rights than he possessed under his agreement with Young acting as agent.

Nor does the appellant stand in any better position with reference to the "interim certificates" which he claims to have purchased from Young. As already said, the certificates were delivered to Young, acting as agent for the trust company, for a specific purpose, viz., to settle with the appellant his commission account when he had fully performed the agreement entitling him to such commissions. He was bound to know that Young could not use the certificates for any other purpose, and that he had no right to purchase them from him.

The judgment appealed from is affirmed, with costs.